# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 12, 2008          Decided December 16, 2008

No. 07-5389

NORTH CAROLINA FISHERIES ASSOCIATION, INC., ET AL.,
APPELLANTS

v.

CARLOS GUTIERREZ, HONORABLE, IN HIS OFFICIAL CAPACITY
AS SECRETARY OF COMMERCE,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 06cv01815)

---

*Shaun M. Gehan* argued the cause for appellants. With him
on the briefs was *David E. Frulla*.

*Sambhav N. Sankar*, Attorney, U.S. Department of Justice,
argued the cause and filed the brief for appellee. *R. Craig
Lawrence* and *Aaron P. Avila*, Assistant U.S. Attorneys, entered
appearances.

Before: TATEL and KAVANAUGH, *Circuit Judges*, and
SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Appellants are the North Carolina Fisheries Association, Inc., two commercial fishermen, and a fish-packing plant (collectively, the "Association"). They filed a complaint (petition for review) in district court against the Department of Commerce, claiming that Amendment 13C to the Fishery Management Plan for South Atlantic Snapper Grouper violated the Magnuson-Stevens Fishery Conservation and Management Act (the "Act").[1] The district court granted in part and denied in part the Association's motion for summary judgment. The court held that the Department had not complied with its statutory obligation to promulgate a rebuilding plan for certain fish species following a determination that such species were "overfished," which failure the Government had conceded. The court then ordered that the parties confer on an appropriate remedy and submit a joint proposal or, should disagreement persist, separate proposals. Because the parties were unable to reach agreement, the district court adopted the Government's proposal with slight adjustments to the suggested timetable. This appeal resulted. We conclude that we lack jurisdiction and, therefore, dismiss the appeal.

I

America's fisheries are regulated by the Department of Commerce via the National Marine Fisheries Service. Pursuant to the Act, the Service appoints regional fishery management councils composed of representatives of both commercial and recreational fishermen. These councils are empowered to submit to the Service "fishery management plans" (and any necessary amendments thereto) for fisheries under their authority requiring

---

[1] 16 U.S.C. §§ 1801-1883.

conservation and management.[2]   Under the Act, any plan prepared by a Council must contain measures "necessary and appropriate . . . to prevent overfishing and rebuild overfished stocks" and must take into account, *inter alia*, the technical and biological characteristics of the affected fishery as well as the distributive effects of the plan on fishing communities and other parties interested in the fishery.   Plans, however, do not themselves have any regulatory effect–implementing regulations must also be enacted in order to effectuate them.   Plans and implementing regulations are both subject to public notice and comment rulemaking prior to approval by the Service.  The Act provides for judicial review, implicitly in federal district court and only to the extent authorized by the Administrative Procedure Act, of regulations promulgated by the Service or actions taken thereunder for the implementation of a fishery management plan.

Amendment 13C,[3] an amendment to the Fishery Management Plan for South Atlantic Snapper Grouper, was prepared by the South Atlantic Fishery Management Council in order to end overfishing of black sea bass, snowy grouper, vermilion snapper, and golden tilefish and to permit limited increases in the commercial and recreational harvest of red porgy, off the coast of the Carolinas, Georgia, and Florida.  The Council, however, neglected to include a rebuilding plan for black sea bass and snowy grouper, despite the Service's prior conclusion that these species were not only subject to overfishing

_____

[2] The Service can also initiate the regulatory process.  In the event that the Service first identifies a particular fishery as "overfished" and notifies the relevant regional council of this determination, within two years of such  notification, the appropriate council must prepare and submit a management plan, plan amendment, or proposed regulations.

[3] 71 Fed. Reg. 55,096 (Sept. 21, 2006).

but also already overfished. Notwithstanding, the Service approved Amendment 13C and implementing regulations thereunder on August 14, 2006, imposing a variety of commercial quotas, trip limits, gear restrictions, and recreational bag limits.

The Association, whose members depend upon grouper and bass for their livelihood, along with the State of North Carolina as *amicus curiae*, challenged Amendment 13C and its implementing regulations on the ground that the Service had violated the Act by failing to comply with the national standards for fishery conservation and management set forth by Congress in the Act. Specifically, the Association charged that the Service had not made use of "the best scientific information available" in developing Amendment 13C and that it had neither made a fair distribution of economic burdens nor minimized the negative economic effects of the plan, in violation of §§ 1851(a)(2), (4), (5), (6), and (8) of the Act. It was alleged, moreover, that because the Service had previously made a determination that populations of snowy grouper and black sea bass were "overfished," the Act required that Amendment 13C also include a rebuilding plan for these fisheries. Finally, the Association claimed that the Service had violated the Regulatory Flexibility Act[4] in promulgating the plan amendment without adequate consideration of its effect on small businessmen. The Association sought vacation of Amendment 13C and its implementing regulations.

The district court rejected most of the Association's grievances in a thorough memorandum opinion, concluding that the Service had acted reasonably in its discretionary balancing of the various interests implicated. *N.C. Fisheries Ass'n v. Gutierrez*, 518 F. Supp. 2d 62, 95 (D.D.C. 2007) ("*N.C.*

---

[4] 5 U.S.C. §§ 601-612.

*Fisheries I*"). The Service conceded the validity of the Association's remaining claim that, consistent with the Act, Amendment 13C must include rebuilding plans for the replenishment of the overfished snowy grouper and black sea bass stocks and not merely restrictions designed to end the overfishing of these species. Accordingly, the court held that Amendment 13C was unlawful. *Id*. at 101.

The district court, relying on our precedent, *see*, *e.g.*, *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 98 (D.C. Cir. 2002), declined to vacate Amendment 13C, as the Association had requested, because it would be "highly disruptive." *N.C. Fisheries I*, 518 F. Supp. 2d at 104. But the judge, apparently concerned about the delay inherent in the Service's rulemaking process–despite there having been no allegation of unreasonable delay–did not merely remand to the Service. Instead, he ordered the parties to confer on an appropriate remedy or else to submit separate remedial proposals. *Id*. at 104-05.

Discussions between the parties did not yield agreement, and separate proposals were proffered. By the time of the remedial negotiations between the parties, the Service had already drafted Amendment 15, an omnibus amendment to the fishery management plan containing, *inter alia*, rebuilding plans for the snowy grouper and black sea bass fisheries, and the existence of the amendment was apparently made known to the district court. The court approved the Service's remedial proposal, which called for the removal of the rebuilding provisions for snowy grouper and black sea bass from Amendment 15 and their placement into a separate Amendment 15A, where the provisions could proceed through the administrative process in a more expeditious manner. *N.C. Fisheries Ass'n v. Gutierrez*, 518 F. Supp. 2d 105, 106 (D.D.C. 2007) ("*N.C. Fisheries II*"). After insisting on a shortening of the proposed administrative calendar,

the court deemed this proposal to be an appropriate remedy and remanded to the Service. *Id*.

The Association, objecting to the Service's proposal, had urged the court to require the inclusion of certain management measures and requested interim reinstatement of quota levels in effect for the first year of Amendment 13C. The court recognized, however, that the Association's preferred remedy would essentially require relitigation of the very same issues decided by the district court in its first opinion. *Id*. at 107. The court noted, moreover, that the Association would "have an opportunity to air [its] displeasure during the public comment period" for Amendment 15A. *Id*.

The Service ultimately approved Amendment 15A on March 14, 2008 after an administrative process that, we are told, included consideration of written comments and public hearings. Yet, for reasons that were not explained by the Service, implementing regulations were not promulgated. (Paradoxically, due to the fact that this appeal was taken from the district court's remand order *prior* to issuance of the relevant amendments, the record before us includes *neither* Amendment 15A nor for that matter Amendment 15.) It is undisputed that the Association and its constituent members participated in this process, but they did not seek judicial review of Amendment 15A in the district court. Instead, the Association filed this appeal.

II

The Association claims that the district court remand order was not an adequate remedy for the violations that the court found. Yet its brief reiterates many of the same merits arguments the district court rejected, *i.e*., that the remedial order did not correct the Service's alleged failure to consider distributive impacts on commercial and recreational fishermen,

as well as fishery-dependent communities. The Service responds that we lack jurisdiction to hear the appeal because the case is moot. It explains that since its sole legal error–the failure to include a rebuilding plan in Amendment 13C–has been corrected, the controversy has terminated. We do not agree: the controversy is not moot, because there remains a live dispute as to the Association's contention that Amendment 15A is inadequate, but we agree that we lack jurisdiction for somewhat different, if related, reasons.

It is black letter law that a district court's remand order is not normally "final" for purposes of appeal under 28 U.S.C. § 1291. *NAACP v. U.S. Sugar Corp.*, 84 F.3d 1432, 1436 (D.C. Cir. 1996); *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 329 (D.C. Cir. 1989). Granted, there is a limited exception permitting a government agency to appeal immediately rather than bear significant expenses that cannot be recovered or take action pursuant to the remand that cannot be reversed if it is later determined that the order was improper, *U.S. Sugar Corp.*, 84 F.3d at 1436 (citing *Occidental Petroleum*, 873 F.2d at 330), but that path is not normally available to a private party. *See Lake Pilots Ass'n v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004).[5] We have recently applied this principle in a similar dispute involving the Service. In *Oceana, Inc. v. Gutierrez*, No. 05-5176, 2006 WL 1457713 (D.C. Cir. May 22, 2006), we said that a district court order remanding another fishery management plan amendment was not a final decision and, therefore, dismissed the appeal.

The Association's attempts to distinguish *Oceana* are unpersuasive. First, it is argued that the district court's opinion

[5] Moreover, appeal under the collateral order doctrine set forth in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 546-47 (1949) is similarly inappropriate.

definitively determined the "metes and bounds" of Amendment 15A's substantive content; thus, it would have been futile to litigate the matter again in district court. In other words, since the district court had already passed judgment on the essential legality of Amendment 15A and had predetermined that the Service need not consider the distributive impact of its fishery plan, a new petition challenging Amendment 15A, which would undoubtedly be assigned to the same judge, would be redundant.

To be sure, the district court, sitting as a court in review of agency action under the Act and APA, should have done what a court of appeals normally does when it identifies an agency error: remand to the agency for further proceedings. As we have said, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus. v. U.S.*, 52 F.3d 363, 365 (D.C. Cir. 1995) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943)); *see also South Prairie Constr. Co. v. Int'l Union of Operating Eng'rs*, 425 U.S. 800, 806 (1976); *Federal Power Comm'n v. Idaho Power Co.*, 344 U.S. 17, 20 (1952); *Global Van Lines, Inc. v. ICC*, 804 F.2d 1293, 1305 n.95 (D.C. Cir. 1986). Only in extraordinary circumstances do we issue detailed remedial orders, and this maxim applies equally to district courts acting in an agency review capacity.

Although a simple remand for proceedings consistent with the court's opinion would have been preferable, the district court judge's order did not actually approve Amendment 15A; indeed, he was never presented (as we have not been) with the amendment's text. He did say that "the proposed rebuilding plan is consistent with [the Service's] general rebuilding plan criteria as defined in the agency's own 'Technical Guidance specifications.'" *N.C. Fisheries II*, 518 F. Supp. 2d at 106-07.

The Association construes this statement as not only *approving* the actual plan, but also as ignoring and thereby dismissing *sub silentio* and *ex ante* the other statutory criteria. We think that this contention makes a mountain out of a molehill. After all, as we have noted, the court recognized that the Association would have a full opportunity to express any concerns with Amendment 15A during the comment period. Implicitly, then, the district judge recognized that Amendment 15A (and any future implementing regulations) could be challenged when promulgated. And he certainly did not prejudge such challenges, which could well be based on an entirely fresh record. In short, the district judge did not have before him–and did not explicitly approve–Amendment 15A.

Still, the Association claims that it might not have been able to challenge Amendment 15A because it was not a "regulation" promulgated by the Secretary under 16 U.S.C. § 1855(f)(1) and (2),[6] since when the amendment was issued it included a statement that it "does not contain measures with direct regulatory effect." 73 Fed. Reg. 14942 (Mar. 20, 2008). Rather, the amendment was styled merely as "agency action." *Id*. However, at least one circuit court has interpreted § 1855(f)(1) to include challenges to agency actions that are in substance challenges to prior regulations. *See Turtle Island Restoration Network v. DOC*, 438 F.3d 937 (9th Cir. 2006) (concluding that the court lacked jurisdiction on time-bar grounds). And, in any

---

[6] "Regulations promulgated by the Secretary . . . shall be subject to judicial review to the extent authorized by, and in accordance with, [the APA], if a petition for such review is filed within 30 days after the date on which the regulations are promulgated or the action is published in the Federal Register, as applicable . . . ." 16 U.S.C. § 1855(f)(1). "Actions" are defined as "actions that are taken by the Secretary under regulations which implement a fishery management plan." 16 U.S.C. § 1855(f)(2).

event, APA review would appear to suffice. 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

It does seem rather peculiar–perhaps even a bit fishy–that the Service promulgated Amendment 15A without accompanying regulations, indeed, without any "regulatory effect." Recall that the Service acknowledged that it had violated the Act (which was rather obvious) by omitting a rebuilding plan; thus, it could be thought that the Service is continuing to evade its statutory obligations by failing to put teeth into the rebuilding plan. But if the Association thought that the Service had not complied in substance with the district court's mandate, it should have sought direct relief in the district court. In any event, we lack jurisdiction at this stage in the proceedings.

The case is dismissed.

*So ordered*.