**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 24, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STATE OF WYOMING; PARK
COUNTY COMMISSIONER HALL, in
his official capacity, a/k/a Bucky Hall;
PARK COUNTY COMMISSIONER
FRENCH, in his official capacity, a/k/a
Tim A. French; PARK COUNTY
COMMISSIONER BREWER, in his
official capacity, a/k/a Bill Brewer;
PARK COUNTY COMMISSIONER
SIGGINS, in her official capacity, a/k/a
Jill Shockley Siggins; PARK COUNTY
COMMISSIONER FONTAINE, in her
official capacity, a/k/a Marie A. Fontaine,

          Petitioners-Appellees,

v.

UNITED STATES DEPARTMENT OF
INTERIOR; NATIONAL PARK
SERVICE; UNITED STATES
DEPARTMENT OF THE INTERIOR
SECRETARY, in his official capacity,
a/k/a Ken Salazar; NATIONAL PARK
SERVICE DIRECTOR, in her official
capacity, a/k/a Mary Bomar; NATIONAL
PARK SERVICE REGIONAL
DIRECTOR INTERMOUNTAIN
REGION, in his official capacity, a/k/a
Michael Snyder,

          Respondents-Appellees.

--------------------------------
INTERNATIONAL SNOWMOBILE

No. 09-8035

MANUFACTURER'S ASSOCIATION, INC.; AMERICAN COUNCIL OF SNOWMOBILE ASSOCIATIONS; BLUE RIBBON COALITION, INC.; TERI MANNING, individually,

        Intervenors-Appellees,

NATIONAL PARKS CONSERVATION ASSOCIATION,

        Intervenor-Appellant.

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 07-cv-00319-CAB)**

---

Robert D. Rosenbaum (Holly E. Sterrett and Ingo W. Sprie, Jr. with him on the briefs), Arnold & Porter LLP, Denver, Colorado, for Intervenor-Appellant National Parks Conservation Association.

James Kaste, Senior Assistant Attorney General (Jay Jerde, Deputy Attorney General with him on the brief), Cheyenne, Wyoming, for Petitioner-Appellee State of Wyoming.

Bryan A. Skoric, Park County Attorney, and James F. Davis, Deputy Park County Attorney, Cody, Wyoming, for Petitioner-Appellee Park County Commissioners.

William P. Horn, Birch Horton Bittner & Cherot, PC, Washington, D.C., and Harriet M. Hageman and Kara Brighton, Hageman & Brighton, Cheyenne, Wyoming, for Intervenors-Appellees International Snowmobile Manufacturer's Association, American Council of Snowmobile Associations, Blue Ribbon Coalition, Inc. and Teri Manning.

---

Before **O'BRIEN,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

**GORSUCH**, Circuit Judge.

This is the latest installment in a long series of cases seeking to resolve the fate of snowmobiles in Yellowstone National Park. Our particular case began in district court in Wyoming, when the State of Wyoming and allied snowmobile enthusiasts challenged a 2007 National Park Service rule on the basis that it unduly restricted access to the Park. Before the Wyoming district court could rule, however, another district court in Washington, D.C. invalidated the 2007 regulation, though it did so on the basis that the regulation was too easy, not too tough, on snowmobile access. As the Wyoming district court saw it, the D.C. decision answered one question—what to do about the 2007 rule—but posed another: what rules of the road should govern access to the Park until the Park Service could issue a new regulation in response to the D.C. district court's decision? Perceiving an unfilled regulatory gap and a resulting uncertainty among the parties and public, the Wyoming district court issued an interim remedial order allowing 720 snowmobiles to enter Yellowstone daily until the Park Service could craft a new rule of its own.

When this appeal came to us, then, it was a dispute only over whether the Wyoming district court had the power to order its interim remedy. With winter fast approaching, we afforded the litigants the first available opportunity to argue this question to us. But time waits for no one, and in the brief period since we

heard oral argument, the topography of this case changed yet again, when the Park Service promulgated a new regulation for this winter season. It now makes no difference whether or not the Wyoming district court had the power to issue the interim relief as it did. Either way, the Park Service's new regulation, not the court's order, will govern snowmobile access in Yellowstone. Although interesting academic questions about the district court's now-supplanted order may remain, under Article III of our Constitution federal courts may answer only questions whose resolution will have an actual effect in the real world. Because no such questions remain in this case, we dismiss this appeal as moot, vacate the judgment of the district court, and remand with instructions to dismiss the case for lack of subject matter jurisdiction.

I

Over the last three decades, the question of snowmobiling in Yellowstone National Park[1] has inspired a great many regulatory initiatives and lawsuits filling volumes in the federal register and reports. It is virtually impossible to understand the narrow and very particular dispute currently before us without at least some general appreciation of this background.

---

[1] All of the rules we discuss here also set snowmobile use policies for Grand Teton National Park and the John D. Rockefeller, Jr., Memorial Parkway, both located in Wyoming south of Yellowstone National Park. Following the parties' lead, we refer throughout this opinion only to Yellowstone and the snowmobile limits specific to that park, keeping in mind that the rules affect all three parks.

That takes us back to 1974. That year, in response to an executive order by President Nixon directing the Secretary of Interior to establish policies for off-road vehicles on public lands, Executive Order No. 11644, 37 Fed. Reg. 2877 (Feb. 8, 1972), the National Park Service adopted a default rule for all national parks: the "use of snowmobiles is prohibited, except on designated routes." 36 C.F.R. § 2.18(c) (2009), *earlier version codified at* 36 C.F.R. § 2.34(c) (1974). Under this default rule—sometimes called the "closed unless opened" rule—the Park Service must promulgate a special regulation designating particular routes in a particular national park open to snowmobiles; absent such a rule, no snowmobiles are allowed.

For many years, a special regulation designated routes open to snowmobiles in Yellowstone and didn't limit how many snowmobiles could enter the park. *See* 36 C.F.R. § 7.13(*l*)(2) (2000). But, after a challenge to this policy brought in a Washington, D.C. district court by snowmobiling opponents, and a resulting settlement, the Park Service adopted a rule in 2001 aimed at effecting a complete phase-out of snowmobiles in the Park after the 2003-2004 winter season. 66 Fed. Reg. 7260 (Jan. 22, 2001).

Rather than resolving the matter, though, this proved only the beginning of a long legal battle, one waged in two district courts separated by half a continent but sharing a common grant of jurisdiction. *See* 28 U.S.C. § 1391(e). A suit challenging the 2001 rule, this time brought in Wyoming district court by

- 5 -

snowmobiling proponents, ended in another settlement and another new rule in 2003.  This rule took a very different course than the 2001 rule, promising to allow 950 snowmobiles into the Park daily.  68 Fed. Reg. 69268 (Dec. 11, 2003).

The 2003 rule itself soon drew a legal challenge, now brought in the D.C. district court by snowmobiling opponents.  At the end of this lawsuit, the D.C. court invalidated the 2003 rule and reinstated the 2001 rule.  *The Fund for Animals v. Norton*, 294 F. Supp. 2d 92, 115 (D.D.C. 2003).  All this did, however, was prod the plaintiffs from the earlier Wyoming action into reviving their challenge to the 2001 rule in Wyoming, a challenge that they eventually won and that resulted in the rule's invalidation.  *Int'l Snowmobile Mfrs. Ass'n v. Norton*, 340 F. Supp. 2d 1249, 1266 (D. Wyo. 2004).

In the wake of all this, the Park Service adopted a new rule in 2004 to govern snowmobile use in Yellowstone until it could complete new environmental impact studies and put in place (what it hoped might be) a more permanent snowmobile policy.  The 2004 rule designated certain routes as open to snowmobiles and authorized up to 720 snowmobiles daily in the park.  69 Fed. Reg. 65348 (Nov. 10, 2004).  The 2004 rule, however, contained sunset clauses providing that its snowmobile authorization and route designations would terminate after the 2006-2007 winter season.  *Id.* at 65360-61.  Unlike its predecessors, this temporary 2004 rule survived *both* a challenge in D.C. brought by snowmobile opponents and a challenge in Wyoming brought by snowmobile

proponents.  *See The Fund for Animals v. Norton*, 390 F. Supp. 2d 12 (D.D.C. 2005) (rejecting a challenge to the 2004 rule brought as a motion to enforce the order invalidating the 2003 rule and holding that it must be brought as a new suit); *Wyo. Lodging & Rest. Ass'n v. U.S. Dep't of the Interior*, 398 F. Supp. 2d 1197 (D. Wyo. 2005) (upholding 2004 rule against challenges under National Environmental Policy Act and Administrative Procedure Act).

The 2004 rule, however, just suspended rather than resolved the fight. After the 2004 rule expired by its own terms, the Park Service introduced in 2007 what it intended to be a permanent rule.  The 2007 rule designated certain routes as open to snowmobiles and allowed 540 snowmobiles in the park daily.  72 Fed. Reg. 70781, 70797-98 (Dec. 13, 2007).  By now perhaps unsurprisingly, this new rule drew near-simultaneous challenges from different directions in more ways than one.  In the D.C. district court, the Greater Yellowstone Coalition and the National Parks Conservation Association (the "Conservation Association"), a private conservation group, challenged the 2007 rule on the ground that it allowed too many snowmobiles.  *Greater Yellowstone Coal. v. Kempthorne*, 577 F. Supp. 2d 183, 186 (D.D.C. 2008).  Meanwhile, a group of petitioners comprising the State of Wyoming and the Park County Board of County Commissioners, together with intervenors, the International Snowmobile Manufacturers Association, the American Council of Snowmobile Associations, the Blue Ribbon Coalition, and Teri Manning (collectively, the "petitioners"), challenged the rule in Wyoming

- 7 -

district court under the Administrative Procedure Act ("APA"), alleging that it permitted too few snowmobiles.

To this point, the Park Service had seemingly sought to pursue a strategy of seeking to please everyone all the time, settling each legal challenge as it came rather than litigating any through appeal for a definitive resolution of the matter. This left the Park Service betwixt and between often conflicting sets of guidance from two different district courts with apparently different visions of the governing law. Seeking to avoid repeating that result, this time the Park Service filed contingent motions in both the D.C. and Wyoming district courts, asking each, as a matter of comity, to transfer its case to the other court. Each district court, however, refused this request, held onto its own case, and sought to proceed toward judgment. The results will hardly surprise, but they form the immediate backdrop of this appeal.

The D.C. district court managed to rule first, declaring the 2007 rule arbitrary and capricious, vacating it, and remanding it to the Park Service for further proceedings. In the D.C. court's view, once again the rule permitted more snowmobiles than the law allowed. *Greater Yellowstone Coal.*, 577 F. Supp. 2d at 210. At the same time, the D.C. court declined to specify whether and what snowmobiling should take place in Yellowstone until the Park Service could prepare a new rule. The Park Service declined to appeal the D.C. district court's vacatur of its 2007 rule and so began work on a new rule.

Meanwhile, the Wyoming district court lamented that the D.C. court, "sitting 2,000 miles away from the actual subject of this litigation[,] feels compelled to hand down a ruling," despite the Wyoming court's concurrent jurisdiction over the Park Service's Yellowstone rules. D. Ct. Op. at 7. It also expressed the view that it would have upheld the 2007 rule. At the same time, the Wyoming court declined to issue such a ruling, explaining that "although this Court may disagree with the D.C. District Court," it did not wish to do anything that might "disturb the order that has already been laid down by" a court of concurrent jurisdiction. *Id.* at 11.

Still, in the Wyoming court's view, the D.C. court's ruling did leave one question unresolved: with the Park Service's 2007 rule now vacated, what should happen in Yellowstone until the agency could prepare a new rule? The Wyoming court believed that a regulatory void existed on this question, and that filling it would resolve a live and important question without trenching on the D.C. court's vacatur of the 2007 rule. So, as a stop-gap measure, the Wyoming district court held that the last valid rule should remain in effect until the Park Service could promulgate a new one. But, of course, the last valid rule was the 2004 rule, and that rule's snowmobile route designations had expired the year before, leaving no "affirmative authorization" for snowmobile use in Yellowstone. So, in the district court's view, filling the perceived void with the 2004 rule only begat another void. In order to remedy this, and thereby "provide businesses and tourists with

the certainty that is needed in this confusing litigation," *id.* at 14, the Wyoming court decided "to reinstate the 2004 temporary rule without the sunset provision," *id.*, "until such time as [the Park Service] can promulgate an acceptable rule to take its place," *id.* at 21.

It is only this ruling—the first in all this sequence in either Washington or Wyoming—that has ever reached an appellate court. And it does so with only the Conservation Association contesting it, the Park Service having elected once again not to appeal. For its part, the Conservation Association urges us to hold that the D.C. district court's decision vacating the 2007 rule rendered the Wyoming case moot and thus deprived the Wyoming district court of subject matter jurisdiction to issue its order reinstating the 2004 rule without its sunset provisions. Although the Wyoming district court granted the Conservation Association's motion to intervene for the purpose of arguing that the case was moot, D. Ct. Op. at 6, 21, its opinion didn't discuss the argument. The question thus comes to us on a clean slate.

## II

Article III authorizes the federal courts to decide only "Cases" and "Controversies." U.S. Const. art. III, § 2. Mootness doctrine exists to help give meaning to this command by requiring us to ensure that we offer opinions only when doing so "will have some effect in the real world." 13B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.1, at 751 (3d ed. 2008). This

restriction on our charter pertains throughout the life of the case. So even if a lawsuit involved a live dispute when the matter was before the district court, should events overtake the case on appeal such that, before the final moment of appellate disposition, the complaining party winds up with "all the relief the federal court could have given him," *Hayes v. Evans*, 70 F.3d 85, 86 (10th Cir. 1995), we will say that the suit has become moot and beyond the power of the federal courts to adjudicate. This holds true even if all the parties before us still wish us to render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong. Our job is to decide cases that matter in the real world, not those that don't. Mootness doctrine, and our consequent inability to render judgment on nice hypothetical or advisory questions, supplies a significant portion of what distinguishes the role of the federal judge from that of the advisor or academic in our constitutional order. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004).

The Conservation Association argues that the D.C. district court's invalidation of the 2007 rule mooted the Wyoming petitioners' challenge to that same regulation. In the Wyoming lawsuit, the primary relief the petitioners sought was the invalidation of the 2007 rule on the basis that it allowed too few snowmobiles. Admittedly, the D.C. district court invalidated the rule on different grounds, finding that the 2007 rule permitted too many, not too few,

- 11 -

snowmobiles. But, the Conservation Association argues, the fact remains that the D.C. court invalidated the 2007 rule, and when it did so there was no live controversy left for the Wyoming district court to resolve.

The Wyoming petitioners dispute this conclusion in at least two ways. First, they point out that the D.C. district court's ruling is currently on appeal before the U.S. Court of Appeals for the District of Columbia Circuit, and so it's not yet irrevocably clear whether the 2007 rule will stand or fall. It may be that the prospect of reversal by the D.C. Circuit is remote, given that the D.C. decision was appealed only by private intervenors and not by the Park Service. *See N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008); *Trout Unlimited v. U.S. Dep't of Agric.*, 441 F.3d 1214 (10th Cir. 2006). But even so, they submit, their dispute hasn't become totally vaporous—at least not yet. Second, petitioners emphasize that the D.C. decision didn't give them all the relief they sought from the Wyoming court because, in addition to seeking the invalidation of the 2007 rule, they asked the Wyoming court to reinstate the 2004 rule's 720-snowmobile limit as interim relief until such time as the Park Service could turn out another new rule. Nothing in the D.C. case, they submit, purports to address the question of interim relief and so at least this aspect of their Wyoming case is untouched by anything that has happened or might happen in the D.C. lawsuit.

Beyond this knot of mootness questions the parties visit upon us lie still other loose ends they haven't addressed. For example, what about the 2004 rule's

sunset provisions?  Arguably at least, the Wyoming district court's reinstatement of the 2004 rule without its sunset provisions may be the functional equivalent of invalidating those provisions—yet, the petitioners did not challenge them in their petitions for review, and it is an interesting question whether a district court may set aside agency action not named in a petition for review.[2]  Also, what of the default rule prohibiting snowmobiles absent a valid Park Service regulation specifically authorizing them?  Given the sunset provisions in the 2004 regulation, the default rule arguably might be the last valid regulation in effect.  Yet, the Wyoming district court did not appear to consider this possibility.  Instead, it proceeded on the belief that the D.C. district court's invalidation of the 2007 rule left a regulatory void and considerable uncertainty about whether and how many snowmobiles would be permitted in Yellowstone.  But the default rule has always remained in place and it expressly forbids snowmobiles in national parks when there exists no other special regulation permitting them.  The district court didn't explain why the default rule failed to fill the regulatory void it

---

[2] *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("Reviews of agency action in the district courts must be processed *as appeals*.  In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure."); Fed. R. App. P. 15(a)(2)(C) (stating that petition for review to circuit court must "specify the order or part thereof to be reviewed"); *City of Benton v. Nuclear Regulatory Comm'n*, 136 F.3d 824, 826 (D.C. Cir. 1998) (dismissing for lack of jurisdiction petition for review that failed to name order to be challenged); *Gottesman v. INS*, 33 F.3d 383, 387-88 (4th Cir. 1994) (same).

perceived, let alone purport to adjudicate any challenge to the default regulation before effectively undoing its dictates.

These examples only begin to describe the questions lurking here. The parties also do not address the question whether comity may have required the Wyoming district court to refrain from entering a remedy after it chose to defer to the D.C. district court on the question whether to invalidate the 2007 rule. Neither do they address whether preclusion, not mootness, may be another, and perhaps more appropriate, way of describing the D.C. decision's effect on the Wyoming proceedings. *See* 13B Wright, Miller & Cooper, *supra*, § 3533.2.1, at 827-28. And because "an intervenor who lacks standing cannot pursue an appeal if the original parties choose not to," *San Juan County, Utah v. United States*, 503 F.3d 1163, 1174 (10th Cir. 2007), there may also be some question whether the Conservation Association has a sufficient legal interest remaining in this case to appeal the district court's decision when the Park Service has elected not to do so. Finally, even on the question the parties do present to us—whether a court's invalidation of a regulation, with an appeal pending in that case, renders other challenges to that regulation moot—each side (accurately) accuses the other of citing no authority to have dealt with an analogous situation.[3]

_____

[3] *See* Ans. Br. at 13-14 ("[The Conservation Association] has failed to identify a single analogous case where the jurisdiction of one district court was terminated by a second court's invalidation of the agency action at issue."); Reply Br. at 2 ("But [the petitioners] offer not a single case that actually stands for the

(continued...)

- 14 -

## III

Though by now this case has begun to resemble a procedural maze, a recent event has cut for us a clear path through to an obvious and inevitable end. On November 20, 2009, the Park Service promulgated a new temporary rule. Under that rule, 318 snowmobiles are permitted in Yellowstone on a daily basis through the 2010-2011 winter season. 74 Fed. Reg. 60159, 60160 (Nov. 20, 2009).[4] What happens after that, the Park Service says, will be left for future rules to sort out.

How does this development affect us? By its own terms, the Wyoming district court's interim relief decision at issue in this appeal ordered the Park Service to reinstate the 2004 rule only "until such time as it can promulgate an acceptable rule to take its place." D. Ct. Op. at 21. With the Park Service's promulgation of its new rule, then, the Wyoming district court's order expired by its own terms. Put differently, even if this case wasn't moot before, it surely is now. And because that fact is enough to decide the case before us, we needn't—indeed, can't—try to untangle the many other difficult and complex questions posed to us by the parties. As Chief Justice Roberts has succinctly put our point, "if it is not necessary to decide more, it is necessary not to decide

---

[3](...continued)
proposition that, without more, an appeal from an order vacating a regulation precludes the order from mooting other claims challenging the same regulation.").

[4] The Park Service also adopted a separate rule establishing permanent snowmobile policies for Grand Teton National Park and the John D. Rockefeller, Jr., Memorial Parkway. 74 Fed. Reg. 60183 (Nov. 20, 2009).

- 15 -

more." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).

How exactly is this case mooted by the Park Service's new regulation? In this appeal, the Conservation Association wished for us to declare the district court without authority to dictate the number of snowmobiles that might enter Yellowstone this winter. By its terms, however, the district court's order has expired and the Park Service's new regulation, not the district court's order, promises to govern snowmobile access this winter season. In other words, we could give the Conservation Association no more relief from the district court's order than the intervening new Park Service regulation already has. The Conservation Association itself acknowledges and readily admits all this. *See* NPCA Opp'n to Mot. for Limited Remand 9-10. Moreover, because the new Park Service rule also supersedes its 2007 rule, it is now beyond cavil, even assuming it wasn't before, that the petitioners' underlying challenge to that rule is also moot. As our court has previously explained, "[b]y eliminating the issues upon which this case is based, [the agency's] adoption of the new rule has rendered the appeal moot." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005). Any ruling on the validity of the now-supplanted and ineffective district court order or 2007 rule could only "constitute a textbook example of advising what the law would be upon a hypothetical state of facts rather than upon an actual case or controversy as required by Article III of the Constitution." *Id.* at

1212-13 (internal quotation marks omitted). We would be issuing a ruling that would have no effect in the world we now inhabit but would serve only to satisfy the curiosity of the litigants about a world that once was and is no more.

The petitioners contest this. On their reading, the district court's order purports to govern the terms of snowmobile access in Yellowstone until such time as the Park Service promulgates a *permanent* rule—that is, one without sunset provisions or time limits. The Park Service's new regulation, meanwhile, purports to govern only this coming winter season and the next. In the petitioners' view, the Park Service thus has violated the district court's order by adopting a "temporary" rule to replace the 2004 rule, and so they ask us to remand this case back to the district court for proceedings to enjoin the Park Service from administering its new temporary rule.

We think this an unreasonable reading of the district court's order, one without support in the order's language, and one in tension with fundamental principles of administrative law. The district court's opinion simply doesn't say, or even suggest, that the Park Service must promulgate a "permanent" rule before its order expires. Instead, it merely says that its order expires when the Park Service promulgates an "acceptable" rule. And the district court's opinion makes clear that an "acceptable" rule means no more than one that is "in compliance with the D.C. District Court's order," D. Ct. Op. at 12, which of course did not require the Park Service to adopt a permanent replacement rule, *see Greater*

- 17 -

*Yellowstone Coal.*, 577 F. Supp. 2d at 210.   The Wyoming district court was adamant, moreover, that it intended to do nothing that would "disturb," "amend, modify, or revoke" the order of the D.C. district court.  D. Ct. Op. at 11 (internal quotation marks omitted).  It is unfathomable to think the Wyoming court nonetheless would have done just that by attempting to dictate the kind of rule the Park Service must produce.

Rather, it's clear that the Wyoming court's actions were deliberately crafted to avoid conflict with the D.C. proceedings, and sought only to fill a perceived temporary regulatory void left by that decision—namely, what policy would govern snowmobiles in Yellowstone until the Park Service could adopt a new rule.  The district court's driving and repeatedly expressed concern was that there be some regulatory "certainty" about the status of snowmobiles in Yellowstone during the then-upcoming winter season.  *Id.* at 14-15.  As we've explained, such certainty may have already existed in the form of the default rule and thus the void the district court perceived was perhaps more illusory than real.  But none of this diminishes the fact that the district court's opinion sought only to fill a perceived regulatory gap and evinced no intention to control what the rule must be after the Park Service has had an opportunity to go through the APA procedures and adopt its own rule.

Further confirming our understanding of the district court's order are basic principles of administrative law.  To set aside an agency action—such as the

choice to issue a temporary rather than a permanent rule—a court must first find the action "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009) (stating that the APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness"). After all, "flexibility in reconsidering and reforming of policy," including the opportunity to choose between temporary and permanent rulemaking, is "one of the signal attributes of the administrative process," *NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 289 (1973) (White, J., dissenting) (quoting *City of Chicago v. Fed. Power Comm'n*, 385 F.2d 629, 637 (D.C. Cir. 1967)), and courts will not lightly interfere with it. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974). Nothing in the Wyoming district court's order, of course, purported to find that the Park Service couldn't make use of temporary snowmobile rules without violating the law; indeed, out of deference to the D.C. decision, the Wyoming district court expressly declined to make *any* finding that the Park Service's rules either violated or conformed with the APA. To read the Wyoming court's order as petitioners do, then, we would have to make the incredible assumption that the Wyoming district court deliberately sought to foreclose the use of temporary rules without ever first making the necessary finding that their use is legally impermissible.

Fortunately, as we've explained, there's no reason to think the district court did any such thing. Every indication before us leads to the unremarkable conclusion that the court narrowly tailored its order to fill a perceived regulatory gap, providing authorization for snowmobiles in Yellowstone only until the Park Service acted. Now that the Park Service has acted, by its terms the Wyoming court's order has expired and any challenge to either that order or the supplanted 2007 rule is moot.

IV

When a case becomes moot while on appeal, our general practice is to vacate the district court judgment and remand with instructions to dismiss the case for lack of jurisdiction. *See Wyoming*, 414 F.3d at 1213. Some exceptions do exist. Vacatur can be an inappropriate remedy, for example, when the actions of a nonprevailing party are responsible for rendering the dispute moot. *See id.* In such cases, courts sometimes worry that an unsuccessful party might have altered its behavior in order to moot an appeal and thereby vacate an unfavorable district court judgment—essentially manipulating the jurisdiction of the federal courts to "obtain the relief it was not able to win" in court. *Id.* Here, however, there is no suggestion before us that the Park Service, by adopting a new rule, has mooted the case for any untoward purpose. Far from it. The Park Service did not even seek to appeal the Wyoming district court's ruling, and since then has

- 20 -

simply sought to do its job by replacing the 2007 rule the D.C. district court vacated with some new regulatory direction.

Accordingly, we follow our usual course, and dismiss this appeal as moot, vacate the judgment of the district court, and remand the case to the district court with instructions to dismiss for lack of subject matter jurisdiction. We deny the petitioners' motion for remand as itself moot in light of these holdings. We grant the Conservation Association's motion to file a supplemental appendix.

*So ordered.*