The RATHMANN GROUP d/b/a Rathmann–Foster & Company, Appellee,

v.

Joel TANENBAUM and Joel Tanenbaum Sales, Inc., Appellants.

No. 89–2043.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1989.

Decided Nov. 15, 1989.

Charles M. Poplstein, St. Louis, Mo., for appellants.

James L. Leightner, Clayton, Mo., for appellee.

Before McMILLIAN and WOLLMAN, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Joel Tanenbaum appeals an order of the district court entering a preliminary injunction restraining him from competing with his former employer, The Rathmann Group, Inc. (Rathmann), for a period of one year from the date of Tanenbaum's resignation. We remand the case to the district court with directions to hold a prompt trial on the merits of Rathmann's claims and to substantially increase the bond Rathmann must post with the court to protect Tanenbaum's interests in the event that he succeeds on the merits.

## BACKGROUND

Rathmann operates a beauty and barbershop supply business. It purchased its business from Fred F. Foster in 1988. Tanenbaum had worked as a sales agent for Foster since 1979. At the time he went to work for Foster, Tanenbaum signed an agreement stipulating that if his employment with Foster were to terminate for any reason, he would not work as a sales agent for manufacturers of beauty and barbershop supplies in a twelve-state area of the midwest for a period of one year. All other terms of the employment contract between Foster and Tanenbaum were oral. Following Foster's sale of his business to Rathmann, Tanenbaum sought to clarify the terms of his employment under the company's new management. Rathmann and Tanenbaum executed a written contract describing Tanenbaum's sales territory and commission arrangement on January 6, 1989. The contract contained no noncompete agreement and made no mention of the agreement Tanenbaum previously had entered into with Foster. Rathmann previously had rejected an integration clause proposed by Tanenbaum, however, which stated that the contract represented the sole and complete agreement between the parties.

Tanenbaum submitted his resignation to Rathmann on May 9, 1989. He then organized his own beauty and barbershop supply business and began soliciting trade from customers of Rathmann in his former territory. Rathmann subsequently sought injunctive relief against Tanenbaum to enforce the noncompete agreement Tanenbaum had signed with Foster in 1979. After hearing arguments from both parties, the district court entered a temporary restraining order (TRO), conditioned on Rathmann's posting a $5000.00 bond, granting the relief Rathmann sought for the period from May 24, 1989 to May 30, 1989.

The district court held an evidentiary hearing on May 30, 1989 to consider Rathmann's motion for a preliminary injunction. Thereafter, the court continued the TRO until June 6, 1989, conditioned on Rathmann's posting an additional $5000 bond. On June 22, 1989, the district court issued an order granting the motion for a preliminary injunction. The injunction restrained Tanenbaum and his affiliates from competing with Rathmann in a twelve-state area of the midwest until May 9, 1990, one year

from the date on which Tanenbaum had resigned. The court did not indicate that it intended the injunction to be permanent in nature; and the preliminary injunction was not conditioned on the posting of any additional bond by Rathmann.

## DISCUSSION

Tanenbaum raises two issues on appeal. First, he claims that the district court erred in failing to condition its preliminary injunction on the posting of further security by Rathmann. Second, Tanenbaum contends that because the preliminary injunction grants Rathmann all the equitable relief to which it would be entitled if the noncompete agreement between Tanenbaum and Foster were found to be valid and enforceable by Rathmann after trial on the merits, the injunction is in effect a permanent one. As such, according to Tanenbaum, the injunction should not have been ordered without notice to the parties that the court was considering permanent relief. We address these arguments in turn.

### I.

Rule 65 of the Federal Rules of Civil Procedure provides the procedure for the granting of preliminary injunctions. Fed. R.Civ.P. 65(a)–(e). Subsection (c) states:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. * * *

*Id.*

 Rathmann argues that the two $5,000 bonds it posted on the issuance and extension of the TRO constitute sufficient security for the preliminary injunction. We disagree. Although the amount of the bond required by Rule 65(c) rests within the discretion of the trial court, *Stockslager v. Carroll Elec. Cooperative Corp.*, 528 F.2d 949, 951 (8th Cir.1976), we believe that the district court abused its discretion because it neglected to consider the question

of requiring a bond in addition to the $10,-000 already posted on the issuance and continuation of the TRO. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir.1978) (finding error, not because trial court failed to require a bond in any particular amount, but because court failed to exercise discretion required by Rule 65(c) by expressly considering question of requiring bond).

The district court apparently considered the need for plaintiff to post a bond twice during the proceedings of this case; when it issued the TRO and required a $5,000 bond, and when it continued the TRO and required an additional $5,000 bond. That the district court required an additional $5,000 bond merely to extend the duration of the TRO by one week suggests that the court recognized the potential loss to defendant which an improperly granted injunction could cause. Anomalously, however, the district court's order of the preliminary injunction restricting Tanenbaum from competing with Rathmann for an entire year makes no mention of the need for additional security from Rathmann to protect Tanenbaum from an erroneously granted preliminary injunction. Evidence in the record indicates that Tanenbaum may lose gross income of $13,000 per month as a result of the injunction. The $10,000 that Rathmann posted pursuant to the TRO thus is inadequate to protect Tanenbaum in the event that a trial on the merits results in a decision in his favor. Consequently, we believe that the district court improperly failed to consider whether Rathmann should post an additional bond as a condition of the court's issuing its preliminary injunction.

### II.

 Tanenbaum's second contention, that the district court improperly issued what effectively was a permanent injunction preventing Tanenbaum from competing with Rathmann for a period of one year, also has merit. "The primary function of a preliminary injunction is to preserve the status quo until, upon final hear-

**790**

ing, a court may grant full, effective relief." *Ferry–Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir.1984) (citation omitted). In deciding whether to grant the preliminary injunction, the district court applied the standard set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). The court found that Rathmann could suffer irreparable harm absent the injunction, that such harm would outweigh the potential injury to Tanenbaum that granting the injunction would cause, that Rathmann was likely to succeed on the merits, and that the injunction would not harm the public interest. While we express no opinion on the ultimate merits of the case, we believe that the district court properly applied the *Dataphase* standard. The district court's preliminary injunction, however, extends until May 9, 1990, one year from the date on which Tanenbaum resigned from Rathmann's employ. Because the noncompete agreement that Tanenbaum entered into with Foster mandated no competition between the parties for the same one-year period, Rathmann's success at trial on the merits would give Rathmann precisely the same injunctive relief that the preliminary injunction provides.

 An order that grants the plaintiff all the relief it ultimately may be entitled to and that makes no provision for further hearings is a permanent injunction. *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir.1967). Additionally, the burden on a movant to demonstrate that an injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Calvin Klein Cosmetics Corp. v. Lenox Laboratories*, 815 F.2d 500, 503 (8th Cir.1987).

█ We believe that the district court failed fully to weigh these considerations in entering its injunction. Although we acknowledge the district court's discretion to issue a preliminary injunction, we believe that the scope of the injunction issued exceeds the limits necessary to protect Rath-

mann until the matter can be decided on the merits. Additionally, we believe that the district court erred in failing to notify the parties in advance of the relief its order contemplated. *Cf. Ecolab, Inc. v. Morisette*, 879 F.2d 325, 327 (8th Cir.1989) (per curiam) ("A district court normally should not consolidate a hearing on a preliminary injunction with a trial on the merits unless the court gives the parties clear notice of its intent to do so.") (citations omitted). Tanenbaum received no indication from the court that it would order anything other than preliminary relief following the May 30, 1989 evidentiary hearing. Consequently, we believe that the court's issuance of a preliminary injunction coextensive with the temporal duration of the noncompete agreement at issue was improper.

We remand the case to the district court for a prompt trial on the merits and for an increase in the bond posted as security by Rathmann. The bond should be of an amount adequate to protect Tanenbaum's business until such time as the district court enters its final decision.