FILED
United States Court of Appeals
Tenth Circuit

August 30, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FRANCES M. FLOOD,

      Plaintiff-Appellee,

v.

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

      Defendant-Appellant.

Nos. 09-4017 & 09-4065

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:08-CV-00631-DB)**

---

Neil A. Capobianco, Seyfarth Shaw LLP, New York, New York (Brian S. Cousin,
Seyfarth Shaw LLP, New York, New York, and James E. Magleby and Jennifer
Fraser Parrish, Magleby & Greenwood, P.C., Salt Lake City, Utah, with him on
the briefs), for Defendant-Appellant.

Rodney R. Parker (Max D. Wheeler and Sam Harkness, with him on the brief),
Snow, Christensen & Martineau, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **TYMKOVICH, EBEL,** and **GORSUCH,** Circuit Judges.

---

**GORSUCH,** Circuit Judge.

---

     Acting on its own motion, the district court issued a preliminary injunction

requiring ClearOne to advance attorney fees and costs to its former CEO, who

was then facing a criminal trial. ClearOne now appeals the district court's injunction, arguing that it was predicated on an error of law, and with this we are obliged to agree.

When assessing the former CEO's entitlement to a preliminary injunction, the district court began by assessing the likelihood she would succeed on the merits of her underlying claim, a claim alleging that the company had an unfulfilled contractual obligation to advance the costs of her criminal defense. In the end, the district court took the view that the company owed the CEO an essentially unconditional advancement obligation, and so the CEO would likely prevail on the merits of her contract claim.

That analysis, however, misreads the parties' contract as a matter of law, disregarding express conditions to advancement specified in their agreement. Because the district court's preliminary injunction order was premised on this legal error, we are obliged to vacate its order, though in doing so we don't purport to prejudge whether and under what conditions the district court might issue a new injunction on remand, let alone whether the CEO or her former employer will ultimately prevail in their underlying contract dispute.

I

A

Frances Flood formerly served as Chief Executive Officer, President, and Chairman of the Board of Directors of ClearOne. In January 2003, the United

States Securities and Exchange Commission and the United States Department of Justice began investigating Ms. Flood's conduct at the company. Roughly a year after the government's investigation started, ClearOne and Ms. Flood entered into an "Employment Separation Agreement" (ESA). Under the ESA's terms, Ms. Flood agreed to transfer her shares of common stock, cancel various stock options and her then-existing employment agreement, and release ClearOne from liability for claims she may have had against the company. In exchange, ClearOne promised to pay Ms. Flood $350,000, release her from liability for any claims it may have had against her, and advance and indemnify the legal expenses she had incurred and would continue to incur in defending matters related to her tenure at the company.

The dispute in this case centers on the company's advancement promise. By its express terms, that promise came with strings attached. Relevant for our purposes, paragraph 8 of the ESA spoke to the advancement question in these terms:

> 8.    Indemnification
> Subject to the limitations imposed by Utah Code Ann. § 16-10a-902 and the Company's articles of incorporation and bylaws, and also subject to the undertaking referred to in Recital G above, ClearOne shall indemnify Flood for any liability and for all reasonable attorneys' fees and costs incurred by her in connection with the SEC Action or any Related Proceeding, whether incurred before or after the effective date of this Agreement. The Company's duty to indemnify Flood is further conditioned upon Flood's fulfillment of her duty under Paragraph 7 above to cooperate with the Company and its counsel in connection with the SEC Action and Related Proceedings. Subject to the foregoing

limitation, ClearOne will continue to pay for the reasonable defense costs incurred by Flood in defending matters or future matters, if any, which may arise from or relate to her tenure as an officer or director of ClearOne.

Appellant's Amended Appendix at 38-39.

In this paragraph, then, the parties agreed to a number of limitations on the company's advancement obligations, including "limitations imposed by . . . the Company's . . . bylaws." Appellant's Amended Appendix at 38. And those bylaws, in turn, provided in pertinent part as follows:

5.1 Indemnification of Directors. The corporation shall indemnify any individual made a party to a proceeding because the individual is or was a director of the corporation, against liability incurred in the proceeding, but only if such indemnification is both (i) determined permissible and (ii) authorized, as such are defined in subsection (a) of this Section 5.1. Such indemnification is further subject to the limitation specified in subsection 5.1(c)

(a) Determination and Authorization. The corporation shall not indemnify a director under this section unless:

(1) a determination has been made in accordance with the procedures set forth in Section 16-10a-906(2) of the Act that the director met the standard of conduct set forth in subsection (b) below; and

(2) payment has been authorized in accordance with the procedures set forth in Section 16-10a-906(4) of the Act based on a conclusion that the expenses are reasonable, the corporation has the financial ability to make the payment, and the financial resources of the corporation should be devoted to this use rather than some other use by the corporation.

(b) Standards of Conduct. The individual shall demonstrate that:

(1) his or her conduct was in good faith; and

- 4 -

(2) he or she reasonably believed that his or her conduct was in, or not opposed to, the corporation's best interests; and

(3) in the case of any criminal proceeding, he or she had no reasonable cause to believe his or her conduct was unlawful.

* * *

5.2 Advancement of Expenses for Directors. If a determination is made, following the procedures of Section 16-10a-906(2) of the Act, that the director has met the following requirements and if an authorization of payment is made following the procedures and standards set forth in Section 16-10a-906(4) of the Act, then the corporation shall pay for or reimburse the reasonable expenses incurred by a director who is a party to a proceeding in advance of final disposition of the proceeding if:

(a) the director furnishes the corporation a written affirmation of his or her good faith belief that he or she has met the standard of conduct described in Section 5.1;

(b) the director furnishes the corporation a written undertaking, executed personally or on his or her behalf, to repay the advance if it is ultimately determined that he or she did not meet the standard of conduct; and

(c) a determination is made that the facts then known to those making the determination would not preclude indemnification under Section 5.1 of these Bylaws or Part 9 of the Act.

Appellant's Amended Appendix at 60-61.

Beginning in May 2007, ClearOne's Board found all the various conditions set forth in the ESA and the company's bylaws satisfied and advanced Ms. Flood the costs associated with her criminal defense. Payments continued after Ms. Flood was indicted in July 2007 and through the Spring of 2008. By that time, however, disputes began to arise over certain of her claimed expenses and in

April 2008 the company paid only half of the monthly invoice submitted by Ms. Flood's attorneys. Shortly thereafter, the company refused any further advancement.

B

In August 2008, Ms. Flood filed this lawsuit in the district court. She alleged that ClearOne breached its contractual promise to advance her defense costs, and she also brought claims alleging unjust enrichment, promissory estoppel, violation of Utah Code Ann. § 16-10a-902, intentional infliction of emotional distress, and, notable for reasons we explain later, breach of the covenant of good faith and fair dealing. By way of remedy, Ms. Flood sought declaratory and injunctive relief, as well as damages.

A month later, in September 2008, ClearOne's Board adopted a resolution reaffirming the company's refusal to provide any further advancement. The Board's resolution invoked Section 5.2(c) of the bylaws, which conditions advancement on a finding that the facts "then known to those making the determination would not preclude indemnification under Section 5.1." Appellant's Amended Appendix at 61. The Board took the view that the facts known to the company *did* preclude indemnification under the terms of Section 5.1(a)(2) because, among other things: (1) "the Company has been unable to determine the reasonableness of the counsel fees and expenses for which the attorneys representing Ms. Flood . . . have been demanding further advancement,"

- 6 -

Appellant's Amended Appendix at 66; and, (2) "the best interests of the Company" necessitated that the funds Ms. Flood sought instead be put to use for other corporate purposes. Appellant's Amended Appendix at 66. ClearOne has argued that the Board reached this second conclusion in part because the company was at the time "plagued by a lack of liquidity resulting from various economic factors." Opening Br. at 15.

C

Back in the district court, the parties filed competing dispositive motions. Ms. Flood sought summary judgment in her favor; ClearOne filed a motion to dismiss or, alternatively, for summary judgment. After hearing argument on the dueling motions, the district court issued an order in January 2009 explaining that "[d]ue to the time constraints and the equities involved," it would "not issue a final ruling on the above motions at the present time." Appellant's Amended Appendix at 125. Instead, the court decided, *sua sponte*, to issue a preliminary injunction requiring ClearOne to advance Ms. Flood's defense costs through at least the conclusion of her criminal trial. The court did so in large measure because it found Ms. Flood likely to succeed on the merits of (at least) her claim that ClearOne had breached its contractual commitment to provide advancement. Anticipating the company's complaint that Ms. Flood would seek to recoup unreasonable fees and expenses, the court ordered ClearOne to pay 60% of all fees and expenses billed by Ms. Flood directly to her attorneys, and to remit the

remaining 40% into a court escrow account. The court indicated it would wait until after the criminal trial finished and then conduct a "reasonableness determination" to settle any disputes over Ms. Flood's fees and expenses. To the extent it found her fees or expenses unreasonable, the court said it would refund the monies held in escrow to the company.

ClearOne filed a timely notice of appeal, seeking review of the district court's preliminary injunction order. Shortly thereafter, Ms. Flood was convicted of all counts in her criminal trial, including conspiracy to falsify ClearOne's books and records, willfully making false statements in quarterly and annual reports, and willfully making and causing to be made misleading and false statements to the company's accountants in connection with the accountants' audits. Ms. Flood's conviction is not yet final, however, because it remains subject to a pending appeal.

D

Based on the jury's verdict, the Board issued another resolution on March 3, 2009. This one declared the Board's view that Ms. Flood was not entitled to advancement (or indemnification) for the additional reason that she now had been found guilty by a jury of charges indicating that she had breached the standards of conduct contained in bylaws Section 5.1(b), as well as other standards of conduct required for advancement and indemnification under Utah statutes. In particular, the Board said the jury's verdict demonstrated that Ms. Flood's "conduct was not

in good faith"; that she "did not reasonably believe that her conduct was in, or not opposed to, the Corporation's best interests"; and that she "had reasonable cause to believe that her conduct was unlawful." Appellant's Amended Appendix at 165. Pursuant to this second resolution, ClearOne refused to pay Ms. Flood's outstanding pre-verdict invoices.

Based on the strength of this new resolution, ClearOne also filed a motion with the district court seeking to be released from the preliminary injunction order. On March 31, 2009, the district court denied that motion and ordered the company to pay Ms. Flood's outstanding pre-verdict invoices as before, 60% directly to her attorneys and 40% to the escrow account. The company complied with the district court's order but then filed a second notice of appeal to challenge this latest ruling.

E

With its two appeals consolidated before this court (the first challenging the January 2009 preliminary injunction order and the second contesting the March 2009 order declining to modify or dissolve the injunction), ClearOne next filed a motion in this court seeking an order staying any "reasonableness determination," or any disbursement of the funds held in escrow, until its appeals could be resolved. A separate panel of this court granted the stay motion on May 21, 2009. As a result, approximately $250,000 currently remains on deposit with the clerk of the district court.

Other proceedings in the district court, however, continued for a time. So, for example, in June 2009 the district court entered an order resolving, in part, the parties' competing dispositive motions. In that order, the district court granted summary judgment for Ms. Flood on her breach of contract claim. At the same time, it dismissed Ms. Flood's claims for unjust enrichment and promissory estoppel, and left Ms. Flood's claims for breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and violation of Utah Code Ann. § 16-10a-902 for resolution at trial.

## II

With this background set forth, there remains another preliminary issue we must attend to before reaching the merits of ClearOne's appeal, an issue concerning our jurisdiction to entertain the appeal at all. It's familiar learning that "[f]ederal courts do not wield plenary jurisdiction over every slight or suit. Instead, our authority is restricted in ways small and large by constitutional and statutory design. Because of this, the task of ensuring ourselves of our own subject matter jurisdiction is not a mere nicety of legal metaphysics, but essential to the rule of law in a free society. The courts, no less than the political branches of government, must respect the limits of their authority." *Hydro Res., Inc. v. Envtl. Prot. Agency*, 608 F.3d 1131, 1144 (10th Cir. 2010) (en banc) (internal quotation marks and ellipses omitted).

The parties before us agree that we have statutory authority to hear this dispute, and about that much there can be no doubt. In 28 U.S.C. § 1292(a)(1), Congress has expressly empowered us to decide, among other things, appeals from interlocutory orders granting and refusing to modify injunctions. ClearOne's consolidated appeal from the district court's January 2009 preliminary injunction order and the district court's March 2009 order declining to modify the injunction fits the bill precisely.

The question whether a live case still exists for us to decide, however, divides the parties. After the district court issued the preliminary injunction orders before us on appeal, it proceeded to adjudicate part of the parties' dispositive motions and granted summary judgment in Ms. Flood's favor on her contract claim. This summary judgment order, Ms. Flood argues, has rendered the company's appeals moot. In her view, "the preliminary injunction has been merged into the final judgment on that [breach of contract] claim," and any appeal must now be from the final judgment. Motion to Dismiss Appeal as Moot at 2-3. Disputes over the preliminary injunction, she contends, have been extinguished or superseded, and we should hold this case moot as a matter of constitutional imperative — or perhaps at least as a matter of prudential restraint. *See* U.S. Const. Art. III, § 2. (limiting federal court jurisdiction to "cases" and "controversies"); 13B Charles Alan Wright, Arthur R. Miller & Edward H.

Cooper, *Federal Practice and Procedure* § 3533.1, at 744-62 (3d ed. 2008) (discussing prudential mootness doctrine).

With this, we can't agree. True enough, preliminary injunctions often serve to "preserve the relative positions of the parties until a trial on the merits can be held," *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and because of this they usually merge into any subsequent final order granting a permanent injunction. In cases of that sort, our focus on appeal is ordinarily confined to the permanent injunction order, not the evanescent and now dissipated or merged preliminary injunction order. *See New Mexico ex rel. N.M. State Highway Dep't v. Goldschmidt*, 629 F.2d 665, 669 (10th Cir. 1980) ("An order granting a preliminary injunction is merged in a subsequent order granting a permanent injunction, and when both orders are appealed from, the former will be dismissed."); *Atomic Oil Co. v. Bardahl Oil Co.*, 419 F.2d 1097, 1102 (10th Cir. 1969) (same); *but see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314-15 (1999) (even after entry of permanent injunction, appeal from preliminary injunction may remain live under certain circumstances not relevant here). In the case before us, however, the district court has yet to enter any permanent injunction into which the preliminary injunction might have merged.

Neither has the district court entered some other sort of final judgment that might have superseded its preliminary injunction orders and supplanted their

effect. *See United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) ("With the entry of the final judgment, the life of the preliminary injunction [generally comes] to an end, and it no longer ha[s] a binding effect on any one." (internal quotation marks omitted)). Various of Ms. Flood's claims remain outstanding and unadjudicated, including her claims for breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, and violation of Utah Code Ann. § 16-10a-902. The only one of Ms. Flood's claims that the district court has so far adjudicated in her favor is her breach of contract claim. But even there the district court hasn't yet directed the entry of a final judgment, so by operation of the federal rules of civil procedure it is free to "revise[]" or revisit its summary judgment order "at any time;" even on Ms. Flood's contract claim, then, nothing is definite, done, over, or final. Fed. R. Civ. P. 54(b); *see also* 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2660, at 137-145 (3d ed. 1998).

Given all this, we can hardly say the ongoing district court proceedings have rendered ClearOne's consolidated appeal moot. A case generally becomes moot when it no longer presents a "live dispute" that "'will have some effect in the real world.'" *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009) (quoting 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3553.1, at 751 (3d ed. 2008)). Here, however, it is by dint of the district court's two challenged preliminary injunction

rulings, and by dint of them alone, that the district court still holds in escrow approximately a quarter of a million dollars. No intervening order or final judgment has diminished this very real effect the preliminary injunction has in the parties' world. In ClearOne's view, the challenged preliminary injunction orders divested the company of money which properly belongs to it and which should be returned immediately. In Ms. Flood's view, the preliminary injunction orders were correctly issued and she is entitled to all the money held in escrow, if subject to the district court's anticipated "reasonableness determination" of her claimed fees and expenses. Plainly, the parties disagree over a question with real significance to them, a question posed only by virtue of the continuing consequence of the district court's challenged orders, and so it is that this appeal isn't moot.

III

With that said, we can now finally turn to the merits of ClearOne's appeal. We begin by briefly acknowledging the legal standards that govern our review (Section III.A), before explaining why those standards compel us to hold the district court's decision in error (Section III.B), addressing the appropriate remedy (Section III.C), and rejecting an alternative basis for affirmance Ms. Flood asks us to consider (Section III.D).

A

Our precedent dictates that we may overturn a district court's order granting a preliminary injunction (or a subsequent order declining to modify such an injunction) only if we detect an abuse of discretion in its issuance. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009). Such an abuse of discretion, we have said, "occurs when the district court commits an error of law or relies upon a clearly erroneous factual finding." *Id.*; *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 647 (10th Cir. 2008).

Preliminary injunctions are, of course, "extraordinary equitable remedies," *Westar Energy*, 552 F.3d at 1224, and to win one a "moving party must demonstrate that four equitable factors weigh in favor of the injunction." *Id.* The moving party must show (1) a substantial likelihood that it will ultimately succeed on the merits of its suit; (2) it is likely to be irreparably injured without an injunction; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).[1]

---

[1] Generally, where the three latter harm factors weigh in favor of the movant, the probability of success factor is relaxed. *Nova Health Syst. v. Edmondson*, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006). But this rule has its exceptions, and three "disfavored" types of preliminary injunctions (those altering the status quo, "mandatory" preliminary injunctions, and those granting the moving party all the relief it could achieve at trial) require "strong showing of the

(continued...)

While federal law governs the procedural questions when a preliminary injunction may issue and what standards of review we apply, because the district court heard this case only by virtue of its diversity jurisdiction, and because the parties have opted in their contract for Utah state law to govern the interpretation of their contract, we analyze the substantive legal questions associated with their dispute under, and in light of, that state's law. *See* 28 U.S.C. § 1332; *Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, 390 F.3d 684, 692 (10th Cir. 2004); Appellant's Amended Appendix at 40 (ESA provides for application of Utah law). And where, as here, the parties call on us to resolve "[q]uestions of contract interpretation which are confined to the language of the contract itself" — questions that don't implicate ambiguous provisions where resort to extrinsic evidence may be necessary — these "are questions of law" for the court to review *de novo* under Utah and federal law alike. *Mellor v. Wasatch Crest Mut. Ins. Co.*, 201 P.3d 1004, 1007 (Utah 2009).

---

[1](...continued)
likelihood of success on the merits and the balance of harms." *Westar Energy*, 552 F.3d at 1224. In its opening brief on appeal ClearOne doesn't argue that any of these exceptions pertain here, so we review its appeal under the usual and generally applicable legal standards adduced in the text. We decline to entertain the company's effort to suggest to us for the first time in its reply brief that the district court's injunction was a mandatory one subject to a heightened degree of scrutiny. *See Hill v. Kemp*, 478 F.3d 1236, 1250 (10th Cir. 2007) ("It is our general rule" that "arguments and issues presented at such a late stage are waived.").

When it took up the question whether to grant a preliminary injunction, the district court began by assessing Ms. Flood's likelihood of success on her breach of contract claim, leaving aside her other claims. Ultimately, the court held that Ms. Flood was likely to succeed on the merits of that contract claim. And this holding formed the foundation on which the court eventually rested its preliminary injunction order. As it happens, however, the district court's holding rests on a legal error, a misinterpretation of the contract's terms. In reaching this conclusion, we don't mean to suggest that Ms. Flood isn't likely to succeed on the merits of her underlying contract claim — or that she is. Neither do we mean to suggest that no preliminary injunction order could possibly be issued in this case. All we mean to suggest is that the district court's preliminary injunction order, as it comes to us, rests on a legal error and so constitutes an abuse of discretion that it is our duty to remedy.

Before the district court, ClearOne argued in its motion to dismiss and for summary judgment that *it* was actually the party likely to succeed on the merits of Ms. Flood's contract claim. The company noted that the ESA conditioned the company's advancement obligations on a "determination" by its Board (or another authorized entity) that "the facts then known to" it "would not preclude indemnification." Appellant's Amended Appendix at 61 (bylaws Section 5.2(c)). Yet, the company submitted, the known facts *did* preclude indemnification under

Section 5.1(a)(2) of the bylaws. And this was because, among other things, the company faced difficult economic times and significant liquidity problems — problems that Section 5.1(a)(2) anticipated and permitted the company to avoid by ceasing advancement to Ms. Flood. Simply put, in the company's view, its promise to advance defense costs wasn't an unconditional guarantee. The contract contained conditions — conditions that permitted the company to stop paying under the circumstances it faced.

The district court disagreed. In assessing the parties' competing chances of success on the merits of Ms. Flood's breach of contract claim, the court held that

> giving effect to the bylaw provisions cited by ClearOne would render ClearOne's indemnification and advancement obligations illusory. In essence, ClearOne argues that it is only required to indemnify or advance funds so long as the company has the financial ability to do so and/or does not have a better use for the money. Were a court to give effect to these provisions, there appears to be no intelligible standard of performance to which the Company would be held.

Appellant's Amended Appendix at 132-33. Essentially, the district court worried that enforcing Section 5.1(a)(2)'s advancement conditions would render ClearOne's advancement promise "illusory." To avoid this result, the district court refused to "give effect" to those conditions — essentially deeming them null and void. The district court then proceeded to hold that, in the conditions' absence, Ms. Flood would likely succeed on the merits of her breach of contract claim. This analysis, however, suffers from two related legal errors, which we address in turn.

1

The district court acknowledged that the parties' contract expressly incorporates conditions to advancement contained in the company's bylaws. But proceeding from this premise, and from the district court's premise that Section 5.1(a)(2)'s conditions render the company's advancement promise illusory, the only possible outcome could be a holding that the company was *never* obligated to provide advancement. An illusory promise, after all, is but a "façade" that imposes no performance obligations on the promisor and affords no consideration to the promisee; the putative promise "neither binds the person making it, nor functions as consideration for a return promise." *Peirce v. Peirce*, 994 P.2d 193, 199 (Utah 2000) (internal quotation marks omitted); *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1036 (Utah 1985); 17 C.J.S. *Contracts*, §§ 36, 84; 3 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 7:7 (4th ed. 2008) (an illusory promise "cannot serve as consideration" and "impose[s] no obligation"); Restatement (Second) of Contracts § 77 (1981). Put differently, if its advancement promise really was illusory, as the district court surmised, ClearOne had no duty to advance Ms. Flood's fees and costs and she was never entitled to receive any. So it is that, if the district court were correct in calling the parties' agreement illusory, the *company* was the party likely to succeed on the merits of Ms. Flood's contract claim, not the other way around.

Of course, the district court took a different view. While acknowledging that the ESA premised advancement on the conditions set forth in the bylaws, the district court declared that it would not "give effect" to those conditions. In this way, the district court sought to reform what it considered an illusory, and thus unenforceable, advancement promise into a more concrete, and thus enforceable, one. Yet, in the process, the court upended the parties' agreement. Far from requiring ClearOne to advance defense costs contingent on (among other things) the financial health of the company, the new promise the district court enforced imposed on the company an unconditional, absolute, and irrevocable promise to advance all reasonable defense costs. The court thus bound ClearOne to provide advancement regardless of the company's financial condition — even if and when its financial condition became extremely precarious. Only on the basis of this new and different advancement promise did (or could) the district court then proceed to hold Ms. Flood the party likely to succeed on the merits of her contract claim.

This was error. The proper response to an illusory promise isn't to reform it into an enforceable one. *See, e.g.*, Restatement (Second) of Contracts § 184 cmt. b (1981) (noting court's power to refuse enforcement of a term "is not a power of reformation, however, and it will not, in the course of determining what part of the term to enforce, add to the scope of the term in any way"). When a

party's promise is genuinely illusory, the court must decline to enforce it; the court may not impose on the parties a new deal to which they've never assented.

2

This observation leads us to an even more fundamental legal problem with the district court's contract interpretation. Though we agree with the district court that the ESA incorporates conditions to advancement set forth in the bylaws, including those found in Section 5.1(a)(2), we can't agree that those conditions render ClearOne's advancement promise illusory.

"By the phrase 'illusory promise' is meant words in promissory form that promise nothing." *Peirce*, 994 P.2d at 199 n.5 (quoting 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts* § 5.28, at 142 (rev. ed. 1995)). "One of the most common types of promises that is too indefinite for legal enforcement," and apparently the kind the district court thought it had before it, is one "where the promisor retains an *unlimited* right to decide later the nature or extent of his or her performance. This *unlimited* choice in effect destroys the promise and makes it illusory." 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 4:27, at 804-05 (4th ed. 2007) (emphasis added); *see also Res. Mgmt.*, 706 P.2d at 1038 (when the promisor retains "an *unlimited* right to decide the nature or extent of his performance," that promise is "too indefinite for legal enforcement" (emphasis added)).

None of this, however, describes the agreement before us. The parties didn't just recite a series of words that amounted to *nothing*. And they didn't leave the question whether to advance fees to ClearOne's unfettered whim. Instead, the company agreed to advance fees subject to certain express contractual conditions. One such condition required a finding that, on "the facts then known" to the Board, Ms. Flood was eligible for indemnification. Appellant's Amended Appendix at 61 (bylaws § 5.2(c)). In turn, eligibility for indemnification depended on a Board finding, under Section 5.1(a)(2), that "the expenses are reasonable, the corporation has the financial ability to make the payment, and the financial resources of the corporation should be devoted to this use." Appellant's Amended Appendix at 60. In the contract before us, then, the company's right to refuse or terminate advancement *wasn't* left to the company's unlimited choice, but was restricted by the parties' agreement, tied to considerations associated with (among other things) the reasonableness of Ms. Flood's expenses and the company's financial health.

Another restriction on the company's discretion existed, too. When ClearOne set about to determine whether or not the parties' contractual conditions to advancement were met, it bore a duty to do so only in good faith. After all, "[t]he law generally imposes a duty to perform contractual obligations in good faith." *Res. Mgmt.*, 706 P.2d at 1037. This legally implied contractual covenant "forbids arbitrary action by one party that disadvantages the other." *Id.* So

- 22 -

where, as here, "one party reserves the right to terminate a contract upon the occurrence of a condition subsequent," rather than reserving the right to its unlimited discretion, "the contract is not unenforceable *ab initio* for lack of mutuality of consideration." *Id.* This remains the case even where, again as here, "the promisor is himself to be the judge of the cause or condition," because "he must use good faith and an honest judgment" in assessing whether that cause or condition has been met. *Id.* at 1038 (quoting 1A Arthur L. Corbin, *Corbin on Contracts* § 165, at 86-87 (1963)). In this way, ClearOne was free to invoke the various contractual conditions allowing it to discontinue advancement but only in a "reasonable" manner. *Markham v. Bradley*, 173 P.3d 865, 871 (Utah Ct. App. 2007).

Admittedly, the question whether ClearOne invoked the contractually specified conditions permitting it to discontinue advancement in good faith isn't susceptible to mathematical proof. We readily concede that "any but the most vacuous general definition of good faith will . . . fail to cover all the many and varied specific meanings that it is possible to assign to the phrase." Robert S. Summers, *"Good Faith" In General Contract Law and the Sales Provisions of the Uniform Commercial Code*, 54 Va. L. Rev. 195, 206 (1968); *see also* Howard O. Hunter, *Incomplete Agreements, Contextual Approach* § 8.8 *in* Modern Law of Contracts (2010) (noting various views on use of good faith). Because of this, detailed factual findings about the parties' expectations and the facts leading it to

invoke a conditional termination clause are sometimes necessary before the covenant's proper application can be assured. This, in turn, is because the covenant is "an 'excluder.' It is a phrase without general meaning (or meanings) of its own and serves to exclude a wide range of heterogeneous forms of bad faith. In a particular context the phrase takes on specific meaning." Summers *supra*, at 201. As much was acknowledged long ago in the opinions that helped shape our contemporary doctrine. *See, e.g.*, *Wood v. Lucy, Lady Duff-Gordon*, 118 N.E. 214, 214 (N.Y. 1917) (Cardozo, J.) (finding that an agreement that didn't recite a particular duty was nonetheless "instinct with an obligation, imperfectly expressed" (internal quotation marks omitted)).

But the well known challenges often associated with applying the covenant to particular cases have never been accepted, at least in Utah law, as a basis for failing to consider or appreciate the covenant's potential usefulness in helping to supply an intelligible and judicially manageable standard for assessing the parties' performance. No doubt other advancement agreements are written in ways that offer executives greater, more air-tight assurances than the one before us. But every advance agreement, like every contract, must be enforced according to its own terms. It is not the place of the courts to transform a contingent promise to pay into an absolute one, or to treat a contingent promise as one investing unenforceable discretion in the promisor, or to refuse to enforce altogether a contingent promise simply because deciding whether or not the

contingency was triggered may require detailed fact-finding. Instead, we must take the cases and contracts as they come to us.

None of this is to say that the implied covenant of good faith and fair dealing is a magic wand that, once waved about, can *always* rescue a contractual term from being held illusory. Or that the covenant may be used as a subtler way to rewrite the parties' deal and decline to give effect to express contractual terms. Just as we may not revise an illusory contract into a different one we think more suitable, we must also take care to ensure that we don't use the covenant as another means for substituting a different deal from the one the parties contemplated.[2] The point of the covenant, as with the process of contract

_____

[2] It is for exactly this reason that where the promisor *does* retain "an *unlimited* right to decide the nature or extent of his performance," that promise must be respected for what it is, even though it means the contract must then be held insusceptible to judicial enforcement. *Res. Mgmt.*, 706 P.2d at 1038 (emphasis added). Likewise, we must be mindful to the possibility that the parties to a contract may have agreed to make the issue of good faith irrelevant to their deal — after all, "[w]hat the intent of the parties was in making the contract must control; it is possible to so draw a contract as to leave [certain] decisions absolutely to the uncontrolled discretion of one of the parties and in such a case the issue of good faith is irrelevant." *Tymshare Inc. v. Covell*, 727 F.2d 1145, 1153 (D.C. Cir. 1984) (Scalia, J.) (internal quotation marks omitted) (discussing demand notes and explaining that "[i]n the understood nature of human arrangements, a loan of money in exchange for a promise to repay on demand does not import an obligation to make the demand only if the money is really needed, or only without the purpose and effect of inconveniencing the obligor"). The "trick is to tell *when* a contract has been so drawn — and surely the mere recitation of an express power is not always the test. Sometimes it may suffice, depending on the nature of the expressed power. . . . But to say that every expressly conferred contractual power is of this nature [that is, expressly disavowing any covenant] is virtually to read the doctrine of good faith . . . out of

(continued...)

interpretation itself, is to honor "the reasonable expectations created by the autonomous expressions of the contracting parties," not paternalistically to foist new ones on them. *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1152 (D.C. Cir. 1984). The covenant is not about "establish[ing] new, independent rights or duties to which the parties did not agree ex ante," "creat[ing] new rights and duties inconsistent with express contractual terms," or "achiev[ing] an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract." *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004). Instead, the covenant is about securing to the parties the sort of good faith performance that, in the particular circumstances of the case at hand, they reasonably thought they were securing at the time they entered the bargain. So where the parties agree to afford one of them the right to determine whether contractual conditions to a certain benefit (or its termination) are satisfied, the covenant steps in simply to ensure that the deciding party's determination isn't infected with any of the "wide range of heterogeneous forms of bad faith," Summers *supra,* at 201, that the two sides hardly could have inventoried and reduced to writing but surely didn't intend to be part of their bargain at the time of contracting.

---

[2](...continued)
existence." *Id.* at 1153-54. In the case before us, however, no party to these proceedings suggests that the contract in this case meant to exclude application of the covenant.

The facts before us find a close parallel in *Resource Management*. The contract before the Utah Supreme Court in that case gave Resource Management the right, "in its sole discretion," to terminate a royalty rights agreement *if* the company determined there wasn't a likelihood of discovering minerals of commercial value sufficient to justify further expenditures of its time or money. *Res. Mgmt.*, 706 P.2d at 1034. The defendant argued that Resource Management's promise was illusory because it permitted the company to avoid its obligations, under the contract, at whim. *Id.* at 1037. But the Utah Supreme Court disagreed. Had the contract stopped with the phrase "in its sole discretion," no doubt it would've been respected for what it was, an unenforceable illusory promise in which performance was left to the company's unfettered discretion. *See, e.g.*, *id. at* 1038 (citing by way of example *Davis v. General Foods Corp.*, 21 F. Supp. 445, 446 (S.D.N.Y. 1937), where the contract stated, "We shall be glad to examine your idea for a new food product, but only with the understanding that the use to be made of it by us, and the compensation, if any, to be therefor, are matters *resting solely in our discretion*" (quotation marks omitted) (emphasis added)).

But the contract didn't stop there. Instead, the *Resource Management* agreement added that it could be terminated only if the company, exercising the discretion entrusted to it by the parties, determined there was no likelihood of discovering minerals of commercial value worth further expenditures of its time

and money. *Id.* at 1038. While this condition surely left much for the parties to argue over, and while the company was contractually assigned the task of judging whether it was met, neither did the contract "leave the promisor free to do as [it] may choose. [The company had] in good faith [to] make an honest estimate" on the specified condition entrusted to its determination. *Id.* at 1039 (quoting 1 Samuel Williston, *The Law of Contracts* § 43, at 140-41 (3d ed. 1957)). In this way, the Utah Supreme Court held, the contract presented a meaningful promise enforceable at law.

Likewise, in the case before us the promise to advance fees is not left to ClearOne's unfettered discretion. Although the determination ultimately rests with the judgment of the company, that judgment is cabined by three separate conditions in Section 5.1(a)(2) alone, conditions that may be invoked only in good faith. To be sure, evaluating whether the company found in good faith that "the financial resources of the company should be devoted" to uses other than Ms. Flood's defense may be a more taxing enterprise than assessing its view that her fees weren't reasonable or that the company couldn't afford to pay them. But even this condition finds a parallel in *Resource Management* — where the company could stop performing if, in its sole discretion, it deemed continuing with the mining operation no longer worth its bother financially, though the contract specified no particular rate of return at which the condition might be satisfied. 706 P.2d at 1034. Other parallels can be found as well in conditions

long understood to be enforceable with aid of the good faith covenant. *See, e.g.,* 1 Samuel Williston, *The Law of Contracts* § 43, at 140-41 (3d ed. 1957) ("Thus an agreement to pay such wages as the employer wishes is invalid, though an agreement to pay such wages as the employer considers "right and proper" is not too uncertain, since performance of such a promise does not leave the promisor free to do as he may choose. He must in good faith make an honest estimate of what is proper."). After all, a court can examine the process ClearOne employed when invoking the "financial resources" condition. If the company is able to present evidence that it invoked the condition only after honestly and reasonably considering its financial options, the court could well conclude the condition was invoked in good faith. If the company lacks such evidence, a very different result might obtain. Neither is it obviously the case that a company will in all circumstances conclude that its resources are better spent on things other than defending its executives against criminal charges. Often it will share an executive's interest in mounting a vigorous defense. There are powerful incentives, after all, to take steps to avoid the stigma (and possible liability) associated with having top company officers convicted of crimes. And any company that promises its executives benefits such as advancement of defense fees, only then to pull the rug out from under them for insufficiently compelling reasons, is likely to make itself less competitive in attracting talented applicants in the future. In light of these considerations (and others), ClearOne was

contractually obliged to make an "honest estimate," not a perfect one, about the company's financial interests before invoking the condition. If the company didn't do so, it can and will be said to have broken its promise to Ms. Flood and will be financially responsible for that breach. In this way, it is possible to respect the express terms of the parties' agreement, both without mistaking it as no agreement at all and without imposing more robust terms on the parties than they themselves agreed. *See generally Peirce*, 994 P.2d at 199 (noting the preference of Utah law that, "[t]hrough a process of interpretation, in the absence of express restrictions," and, of course, only when fairly possible, courts will "find implied promises [of good faith and fair dealing] to prevent a party's promise from being performable merely at the whim of the promisor" and thus illusory (internal quotation marks omitted)); *see also id.* (noting "reasonable, lawful, and effective" contract interpretations are "preferred" to ones that render agreements "of no effect").[3]

---

[3] It appears the concurrence would collapse the contract's "financial resources" condition into its separate "ability to pay" condition in order to save the advancement and indemnification promise from being illusory. *See* Concurrence at 1. But this reading of the parties' agreement is at odds with the plain language and structure of Section 5.1(a)(2), which presents three separate conditions as independent prerequisites to advancement. We are not free to revise a contract's plain terms to save it. Neither, in any event, is doing so necessary to save this contract; as we have explained, even the "financial resources" condition, taken on its own terms, isn't illusory.

C

Our conclusion — that the district court's contract interpretation rests on legal error requiring remedy on appeal — is confirmed by Ms. Flood's own complaint. There, she brought an independent cause of action in (count VII of her complaint, not yet adjudicated), alleging that the company breached the covenant of good faith and fair dealing when it stopped advancing her fees and expenses. Surely this indicates that (at least at one point) she thought the covenant helped impose an enforceable advancement agreement in this case. Neither, of course, does ClearOne dispute that its advancement promise is enforceable, subject to and bounded meaningfully by the covenant of good faith and fair dealing. Instead, the company argues before us that it is likely to succeed on the merits of Ms. Flood's contract and good faith claims because its actions were always consistent with the covenant.

Whether the company is right or wrong on that particular score, we can't tell. Because the district court rested its preliminary injunction order on a legally erroneous reading of the contract, it never reached the question. Of course, even when a district court has failed "to analyze the factors necessary to justify a preliminary injunction," we may proceed to assess the preliminary injunction factors ourselves if "the record is sufficiently developed" to enable us to do so. *Westar Energy*, 552 F.3d at 1224. Ours, however, isn't such a case. Understandably given the nature of the district court's holding, the preliminary

injunction record before us hasn't been developed on the question whether ClearOne's decision to terminate advancement at its September 2008 Board meeting pursuant to the conditions set forth in the ESA and bylaws was or wasn't made in good faith. Neither is it clear from the record now before us whether and to what extent the company can defend its failure to advance fees prior to the September 2008 Board meeting. And these are just a few of the many unanswered questions on which we would expect the parties to join issue once the contract's terms are given their proper legal effect.

All this is to say that, from the record before us, we can't say which side *is* likely to prevail on the merits of Ms. Flood's breach of contract or other claims, or even predict all the arguments they may make on those claims. With certainty we can say only that the contract interpretation the district court offered in its initial preliminary injunction order, and which formed the foundation for that order, is legally erroneous. For this reason, we must vacate the January 12, 2009 preliminary injunction order and remand the case to the district court for further proceedings. In doing so, we offer no views on whether a new and different order should or shouldn't be entered on whatever record may be developed by the parties and district court.

With the preliminary injunction now vacated, mootness doctrine reenters the picture we face. It does so because ClearOne's appeal of the district court's subsequent March 31, 2009 order declining to modify the terms of the preliminary

injunction no longer matters; our decision has left no injunction to modify. It follows that the various questions raised by the company's motion to modify the injunction — including whether the company could properly cease advancement under the ESA and Utah law once the jury returned its verdict, or whether its obligations continued to, say, a final judgment — we need not decide.

D

Seeking to avoid all this, Ms. Flood submits that, even if the district court's legal analysis was erroneous, its ultimate conclusion — that the company had an unconditional obligation to advance fees, making Ms. Flood likely to succeed on the merits of her contract claim — remains sound and should be affirmed for a different reason. This is because, in her view, the ESA doesn't incorporate any of the bylaws' conditions to advancement. Ms. Flood argues that the phrase "foregoing limitation" as it appears in the last sentence of the ESA paragraph, *see supra* Part I.A, refers only to the immediately preceding limitation discussed in the paragraph — namely, the duty to cooperate with the company and its counsel. Under her view, then, the company's promise to advance was contingent only on her cooperation, not on compliance with the conditions set forth in the corporate bylaws.

The district court, however, did not read the ESA in this fashion, and neither do we. The intention of the parties to a contract "must be gleaned from a consideration of the whole instrument." *Caine v. Hagenbarth*, 106 P. 945, 948

(Utah 1910) (internal quotation marks and citations omitted).  And in seeking that intention, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."  *Peirce*, 994 P.2d at 199 (quoting Restatement (Second) of Contracts § 203 (1981)).  Ms. Flood's proffered interpretation fails these standards in several ways.

First, the phrase "foregoing limitation" could just as easily refer not only to the preceding sentence, but to the totality of paragraph 8.  Appellant's Amended Appendix at 38.  Second, and further suggestive of this possibility, is the fact that the sentence immediately preceding the advancement sentence provides that ClearOne's "duty to indemnify Flood is *further* conditioned" on her cooperation, and in this way appears to refer the reader to the various preceding limitations on the company's obligations, including compliance with its bylaws.  Appellant's Amended Appendix at 38 (emphasis added).  Third, under Ms. Flood's interpretation the company issued a contract obliging it to provide advancement absolutely (subject only to her cooperation), even when its bylaws clearly forbid unconditional advancement.  Ms. Flood would thus force us to accept the unlikely proposition that the ClearOne officials who approved the ESA violated the company's bylaws, and so, at least possibly, violated their fiduciary duty of care to the corporation.  *See* 8 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 4197, at 802-04 (Rev. Vol. 2010) ("Bylaws are defined as

private laws of the corporation, and when valid, these self-imposed private laws . . . are in effect written into the charter, and in this sense, they become a part of the fundamental law of the corporation. The corporation, and its directors and officers, are bound by and must comply with them."). Fourth, and finally, under Ms. Flood's reading of the ESA, the company reserved the right to limit indemnification under Section 5.1 of its bylaws in a variety of ways; yet, the company's corresponding duty to advance fees is not cabined by any of these things, but is instead absolute, so long as Ms. Flood cooperates. This, too, is most unlikely. Advancement is a "subsidiary element of the right to ultimate indemnification," often having a "narrower scope," and usually provided only where the costs at issue are at least potentially indemnifiable. *Kaung v. Cole*, 884 A.2d 500, 509-10 (Del. 2005).

In light of all these considerations, pointing as they do uniformly toward the same conclusion, we cannot accept Ms. Flood's reading of the ESA as plausible. And from this it follows that the district court's preliminary injunction order cannot be saved.

IV

Beyond the error we've identified with the district court's preliminary injunction order, ClearOne purports to identify still other problems, arguing, for example, that the preliminary injunction violates Utah public policy or disregards still other contractual or statutory contingencies. But having already determined

that the district court's challenged orders must be vacated, we decline to pass on those arguments at this time. Whether the district court might grant a new injunction on remand, what the record supporting it might look like, and what the terms of such an injunction might be, are at this stage no more than matters of speculation.[4]

The district court's January 12, 2009 order granting a preliminary injunction is vacated. ClearOne's appeal of the district court's March 31, 2009 order declining to modify the injunction is moot. By its terms, this court's May 21, 2009 stay order expires with the conclusion of this appeal. The case is remanded to the district court for further proceedings consistent with this opinion.

---

[4] Separately, ClearOne tasks the district court for failing to consider whether Ms. Flood should've been required to post security when the injunction issued. *See* Fed. R. Civ. P. 65(c); *Coquina Oil Corp v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987); *Corning, Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004); *The Rathmann Group v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). But the company never raised this argument before the district court. ClearOne seeks to excuse this omission by noting that the district court issued its injunction *sua sponte* after considering the parties' dispositive motions and before any briefing on the question of an injunction. But ClearOne moved for modification or dissolution of the injunction, and the district court considered that motion. While ClearOne raised many other arguments in support of its motion, it failed to bring the bond issue to the district court's attention. At the very least, this failure forfeited the argument. *See, e.g.*, *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 895 (1st Cir. 1988) ("Because posting of a bond is not a jurisdictional prerequisite to the validity of a preliminary injunction, and because appellant did not raise the matter below, we reject the assignment of error as untimely.").

09-4017, *Flood v. ClearOne*

**TYMKOVICH**, J., concurring.

I agree with the majority's assessment of the second clause at issue in ClearOne's bylaws. As the majority concludes, the "financial ability to make the payment," while not subject to precise definition, is not so vague as to be illusory. For that reason, the judgment should be reversed and the district court on remand should assess whether ClearOne's management in good faith denied Flood indemnification based on the company's financial ability to pay.

But I must disagree with the majority's assessment of the third clause—"the financial resources of the corporation should be devoted to this use rather than some other use . . . ." I read that clause to complement the "financial ability" clause. Any other reading of the "financial resources" clause, I believe, gives ClearOne unfettered discretion to decide whether and how to perform, and thus renders the contract illusory. 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:7 (4th ed. 1989) ("Where an illusory promise is made, that is, a promise merely in form, but in actuality not promising anything, it cannot serve as consideration.").

At first blush, the "financial resources" clause appears to give ClearOne unlimited authority to determine whether to indemnify Flood. The clause by its own terms does not place any substantive limits on the company's decision whether or not to indemnify Flood, instead stating the company may indemnify

Flood if the company's finances "should" be used to indemnify Flood. That tautology begs the questions: On what basis may ClearOne decide it "should" indemnify Flood? And if ClearOne may choose *any* basis on which to refuse indemnification, what—if anything—was Flood bargaining for?

The majority works around this problem with the "financial resources" clause by claiming Flood was bargaining for process. I agree that process can count as valid consideration for a contract. Or, put differently, Flood could have bargained for the right to have ClearOne consider whether to indemnify her at some point in the future, so long as there were some objective constraints—however vague—on ClearOne's decision process.

The primary Utah case, *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028 (Utah 1985), which the majority correctly relies on, is on point. There, one party could terminate the contract at "its sole discretion" with "reasonable belief that the commercial and mineral value of the property would not justify further performance . . . ." 706 P.2d at 1038. Although the majority notes the *Resource Management* contract did not specify a "particular rate of return" below which the contract could be terminated, that is a problem of *degree* not of *kind*. Trying to judge whether the *Resource Management* party terminated in good faith based on mineral value would be difficult, but at least the parties' financial interests were somewhat aligned—motivating the parties to perform using their best efforts—and the reviewing court would have an object at which to

-2-

direct its good faith analysis (i.e., the projected mineral value and whether it was low enough to justify a good faith termination).  Here, there is *no* substantive basis on which to judge whether ClearOne exercised the clause in good faith.

In practice, then, the majority makes the good faith requirement do double duty: it supplies both the clause's substantive and procedural bases.  But the majority does not make explicit the substantive restraints the good faith requirement imposes, and besides, good faith is usually a procedural review to determine whether a party is honestly trying to live up to its substantive obligations.  *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981) ("Good faith performance or enforcement of a contract *emphasizes faithfulness to an agreed common purpose* and consistency with the justified expectations of the other party . . . .") (emphasis added).

I therefore respectfully concur.